IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| CORETEL VIRGINIA, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:12-cv-00741 |
| VERIZON VIRGINIA LLC, et al. | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

THIS MATTER comes before the Court on remand by the Fourth Circuit Court of Appeals for consideration of CoreTel's claim for injunctive relief and Verizon's damages in light of the Fourth Circuit's opinion. On August 21, 2014, a one-day bench trial was held to resolve those issues. The parties agreed at trial that injunctive relief is no longer at issue and need not be addressed by the Court.

On cross-motions for partial summary judgment, this Court entered summary judgment in Verizon's favor on the issue of liability. <u>CoreTel Virginia, LLC v. Verizon Virginia LLC</u>, 1:12-CV-741, 2013 WL 1755199 (E.D. Va. Apr. 22, 2013) aff'd in part, rev'd in part and remanded, 752 F.3d 364 (4th Cir. 2014). The parties jointly moved for a final judgment on stipulated

damages, which this Court entered. CoreTel appealed the Court's decision.

The Fourth Circuit affirmed in part, reversed in part, and remanded with instructions. CoreTel Virginia, LLC v. Verizon Virginia, LLC, 752 F.3d 364, 375 (4th Cir. 2014). It affirmed the grant of summary judgment in regards to CoreTel's facilities claims, Verizon's reciprocal compensation claims, and Verizon's claim that CoreTel improperly billed it for services under its tariffs.

The Fourth Circuit found the Interconnection Agreement ("ICA") dictated that entrance facilities be provided at the TELRIC rate and remanded to this Court for a determination of the amount owed by CoreTel for the entrance facilities at the TELRIC rate, as well as CoreTel's claim for injunctive relief.

CoreTel ordered and received entrance facilities, transport, and multiplexing from Verizon. The ICA defines an entrance facility as "the facility between a Party's designated premises and the Central Office serving that designated premises." From January 2008 to April 2013, Verizon improperly charged CoreTel for these services at the tariff rate rather than the TELRIC rate. CoreTel did not pay the charged amounts.

Verizon's monthly bills and customer service records contain several pieces of information. First, the type of facility ordered and provided (entrance, transport, or

multiplexing) is identified using a "Universal Service Order Code" or "USOC," which has a corresponding definition in the record's Glossary Section. Second, using a numeric code, the records identify whether the facility was provided by Verizon Virginia or Verizon South. Third, for transport facilities, the records identify the number of airline miles of transport provided. Finally, where the facilities were used in both Verizon Virginia's and Verizon South's territory, the records identify the percentage of each facility in each company's service territory.

The pricing for each facility can be determined by matching the USOC (and the corresponding Glossary definition) with the schedule contained in the Interconnection Agreement's pricing attachment. For example, one USOC contained in the records is "TYFBX," which is defined in the Glossary Section as "Entrance Facility Chan[nel] Term[ination] DS3 – Base Rate Primary Prem[ises]." This USOC definition reasonably corresponds with the Verizon Virginia Interconnection Agreement for "DS-3 Channel Termination" for "Entrance Facilities," which contains an applicable TELRIC rate. All USOCs have a similarly corresponding entry within the ICA schedule.

Verizon presented evidence that the damages due are $227,974.22, plus late payment charges due under the Interconnection Agreements that totaled $131,885.25 through July

2014. CoreTel presented evidence that Verizon is due only $71,432.09 in damages and contends that Verizon is not due any late payment charges.

The Court finds that, after matching all USOCs with their corresponding TELRIC rate contained in the two Interconnection Agreements, applying the TELRIC rate to those facilities, and totaling the amount for each facility provided, CoreTel owes Verizon $227,974.22 for facilities ordered and provided. CoreTel argues the damages claim should be reduced based on five arguments.

First, CoreTel challenges Verizon's application of both TELRIC entrance facility rates and TELRIC transport rates to four specific circuits.[1] CoreTel argues that it should only be charged the TELRIC entrance facility rate because it ordered an entrance facility from its switched location to the Verizon switch location at the end of the circuit. In each of the four instances, however, the entrance facility provided ran from CoreTel's location to the Verizon switch serving that location, where transport was then provided by Verizon to the Verizon switch specified by CoreTel as the end of the circuit.[2] As

---

[1] Specifically, Verizon challenges the billing for switches connecting Ashburn to Leesburg, Ashburn to Fredericksburg, Norfolk to Great Bridge, and two locations within Richmond.
[2] The Ashburn to Leesburg connection required seven miles of transport; the Ashburn to Fredericksburg connection required 52 miles of transport; the Norfolk to Great Bridge connection

defined in the ICA, the entrance facility is only the section between the designated premise and the nearby switch serving that location; the additional distance to the end of the circuit was transport. Verizon is entitled to charge CoreTel at the TELRIC rate for the transport provided in these four circuits.

Second, CoreTel seeks to reduce Verizon's charges by showing that it never ordered facilities from Verizon South and is only subject to the Verizon Virginia ICA. Specifically, CoreTel challenges the application of the Virginia South TELRIC rate to three facilities ordered, apportioning the charges for facilities that crossed borders according to the percentage of the transport facility in each service territory, and the application of Verizon South's TELRIC rates to the Great Bridge multiplexer.

CoreTel is incorrect in asserting that it cannot be billed under the Verizon South ICA. CoreTel entered into two separate Interconnection Agreements with Verizon Virginia and Verizon South, each providing CoreTel the right to lease Verizon facilities to reach Verizon customers. However, nothing in the Verizon Virginia ICA gave CoreTel the right to order Verizon South facilities; this right arose solely from the Verizon South ICA. CoreTel ordered facilities in Great Bridge, Emporia, and

---

required ten miles of transport; and the two connected Richmond switches required eight miles of transport.

Warsaw, which are all located in Verizon South's service territory and therefore were ordered pursuant to the Verizon South ICA. Verizon properly charged CoreTel for these facilities at the Verizon South TELRIC rates.

Further, Verizon properly apportioned the transport facility between Verizon Virginia and Verizon South according to territorial percentage. The National Exchange Carrier Association ("NECA") has established billing percentages between interconnecting switches in a tariff known as NECA's Federal Communications Commission ("FCC") Tariff No. 4. Because the Verizon Virginia and Verizon South ICAs contain different TELRIC rates for transport facilities, Verizon used the percentages found in § 109 of the NECA tariff to determine how much of each rate should be charged for the transport facilities laying in both territories in order to charge CoreTel based on actual use. While the ICAs are silent on the issue of apportionment for jointly provided facilities, Verizon's apportionment method conformed with the FCC's directive to follow the NECA Tariff FCC No. 4 when facilities are provided by multiple LECs. <u>Access Billing Requirements for Joint Service Provision</u>, Order, 65 Rad. Reg. 2d 650, ¶ 95 (Oct. 4, 1988) (available at 1988 WL 488227). Therefore, the Court finds Verizon's cross-territorial billing proper.

CoreTel's final challenge to the Verizon South ICA is in the application of Verizon South's TELRIC rates to the Great Bridge multiplexer. This challenge, however, rests on an incorrect assumption. From January 2008 to March 2009, Verizon charged CoreTel for the use of this multiplexer at the lower Verizon Virginia TELRIC rate. From April 2009 to April 2013, Verizon charged at the higher Verizon South TELRIC rate. CoreTel assumes that the change in billing shows that the second, higher rate is incorrect. However, the multiplexer was at all times located in Verizon South's service territory and should have been billed at Verizon South's TELRIC rate. The original billing at Verizon Virginia's TELRIC rates was improper and Verizon is permitted to amend the billing to correct the mistake.

CoreTel next seeks to reduce the amount Verizon is entitled to by claiming that Verizon's billing of CoreTel for the entire use of the DS3 entrance facilities was improper. The DS3 facilities may vary in use, from "special access" to "switched access." In order to charge the proper rate depending on the facility's use, Verizon applies a "shared use factor" to indicate the percentage of either type of use over a single DS3 facility. The percentage of use attributed to switched access, along with a corresponding special access use percentage, will necessarily total one hundred percent. CoreTel claims it only

ordered and received a portion of the DS3 entrance facilities and it was therefore improper to charge for the entirety of the facilities rather than the shared use rate. The invoices do not support CoreTel's argument. The invoices show that CoreTel was provided a shared use percentage for switched access DS3 entrance facility rate and a shared use percentage to the special access rate that totaled one hundred percent. Therefore, CoreTel received all of the multiplexers to which the DS3 entrance facilities connected. In other words, the DS3 facilities were entirely dedicated to CoreTel's use. Verizon's charges against CoreTel were properly assessed.

Fourth, CoreTel claims that Verizon improperly charged CoreTel for ten miles of transport that occurred within one office. However, the two DS1 circuits that connect CoreTel's Norfolk location to Verizon South's Great Bridge switch require ten airline miles of transport. CoreTel must pay Verizon for the ten miles of transport at the TELRIC rates.

Finally, CoreTel asserts that Verizon's April 25, 2013 invoice improperly billed CoreTel from May 1, 2013, through May 24, 2013, for DS1 facilities that had already been disconnected at CoreTel's request. Bret Mingo, President of CoreTel, testified that CoreTel had submitted immediate disconnect orders to Verizon for all facilities provided by Verizon by the beginning of May 2013. The DS1 facilities, however, were not

disconnected by May 1, as evidenced by the fact that CoreTel was not able to submit disconnection orders for the DS3 facilities until all DS1 circuits were disconnected. CoreTel submitted the DS3 disconnection orders on June 13, 2013, and July 3, 2013. Had the DS1 facilities been disconnected on May 1, it would not have taken CoreTel until mid-June to submit the disconnection orders. No provision of the ICA requires Verizon to cease billing upon the submission of a disconnect order rather than at the time of completion of the disconnection and when CoreTel is no longer able to make use of the facilities. Verizon is entitled under the ICA to charge CoreTel for the facilities provided from May 1 to May 24.

In addition to the regular charges under the TELRIC rate for the services provided, Verizon requests an imposition of a late payment fee under the Interconnection Agreement. The ICA provides for a late payment fee for all unpaid charges at a rate of up to 1.5% per month. Applying this fee to the amount owed under the TELRIC rate would yield a late payment fee of $138,724.47.

CoreTel withheld payment to Verizon because Verizon improperly charged CoreTel at the tariff rate rather than the TELRIC rate. Verizon is entitled to interest as promised for in the Interconnection Agreement.

For the aforementioned reasons, this Court finds that Verizon is entitled to a judgment of $227,974.22 plus interest in the amount of $138,724.47 and the injunction bond and security bon posted by CoreTel should be released. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 2, 2014